**AFFIDAVIT**

I, Joshua Stasio, being first duly sworn, hereby depose and state as follows:

**Introduction**

1.     I have been employed as a Special Agent with the United States Department of Treasury, Internal Revenue Service, Criminal Investigation ("IRS-CI"), since September 2009. I am currently assigned to the Boston, Massachusetts IRS-CI field office, where I am responsible for investigating, among other crimes, criminal violations related to theft of public money and stolen identity refund fraud ("SIRF"). During my tenure with IRS-CI, I have gained extensive experience in financial investigations, specifically relating to tax fraud and identity theft. I have also participated in analyzing financial documents and tax returns, as well as executing search and arrest warrants involving various violations of federal law. I am familiar with financial schemes conducted by criminal organizations and the means by which they attempt to file fraudulent tax returns, obtain fraudulent tax refund checks, and negotiate the fraudulently obtained refund checks. Before becoming a Special Agent, I was employed as an IRS Revenue Officer from April 2005 through September 2009. As a Revenue Officer, I have participated in asset checks, real and personal property seizures, and wage and levy garnishments, and have also collected, reviewed and analyzed tax returns, summonsed and analyzed financial institution records, and reviewed requests for alternatives to IRS collection procedures.

2.     I make this affidavit in support of a complaint that charges CLAUDIA TORIBIO (**"TORIBIO"**), with one count of violating 18 U.S.C. § 641, theft of public money, which makes it a crime to, among other things, negotiate and cash fraudulently obtained U.S. Treasury checks that total more than $1,000, based on her participation in a SIRF scheme.

3. The information contained in this Affidavit is based upon my personal involvement in this investigation and from reviewing information received from a variety of sources, including physical surveillance, IRS databases, other public records searches, and potential witnesses. I have also consulted with other Special Agents that have experience in conducting similar types of investigations. Because this Affidavit is being submitted for the limited purpose of securing probable cause for a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation, but instead have set forth only the facts necessary to establish the requisite probable cause for the issuance of the complaint herein.

**Background – SIRF schemes**

4. A SIRF scheme is generally conducted by multiple co-conspirators in order to fraudulently obtain federal income tax refunds to which they are not entitled. The co-conspirators first obtain the personal identifying information of a real person, including the person's name, date of birth, and Social Security number. The co-conspirators then use that information to file a false U.S. individual tax return in that person's identity, along with false information about the person's purported dependents, income, and employer, all designed to generate a false tax refund. After accepting the return, the IRS issues a U.S. Treasury check for the refund and mails the refund check to the location provided by the co-conspirators as the address of the "taxpayer" on the fraudulent return. A co-conspirator then picks up the check from that address and cashes it him/herself or asks a co-conspirator to do so on his/her behalf. To cash the check, the co-conspirator typically must give the check to a check-cashing business employee or a bank employee who will cash the check for the co-conspirator or overlook the fact that the person who presents the refund check at the teller window is not the

person to whom the refund check was issued.

5.  Based on my training and experience, I am aware that often times in SIRF schemes a person's identity, specifically, their name and social security number, is used with a fabricated address and fabricated employment information including fabricated Form W-2 information. The false information is used to create a fraudulent federal tax return which, when filed, causes a tax refund check to be issued. I also know that many times SIRF schemes use Puerto Rican identities because Puerto Ricans are issued social security numbers but are not required to file Federal Tax returns while working and living in Puerto Rico. Fraudulent use of a valid Puerto Rican social security number increases the likelihood of success of the scheme because the social security number will be recognized as legitimate but the likelihood that the legitimate identity associated with that social security number will be filing a U.S. tax return is low, thereby decreasing the chance that the fraud will be detected due to conflicting filings.

### Background – TORIBIO and All Checks Cashed

6.  On approximately December 21, 2011, an IRS Revenue Agent conducting a routine audit of a business by the name of All Checks Cashed, a check cashing business with locations throughout eastern Massachusetts, noticed that there was an unusually large amount of U.S. Treasury checks cashed by a particular employee of All Checks Cashed, determined to be **TORIBIO**. IRS notified All Checks Cashed of this anomaly.

7.  The investigation revealed that Management of All Checks Cashed maintains check cashing records by scanning the checks into their system and uses a database system called Digicheck which can be used to confirm Social Security Numbers and other information to verify the identity of the person and to verify the authenticity of the check cashed. All Checks Cashed employs the following procedure when an individual cashes a check: (i) if an

individual has never cashed a check at the location, the person is asked to produce a form of Identification; (ii) if the check issuing company is unknown, All Checks Cashed contacts the company in order to verify the check or calls the bank in order to verify the funds; (iii) if the check issuing company is a Massachusetts company, then a Secretary of State on-line search is conducted by All Checks Cashed to verify the company; (iv) All Checks Cashed uses the Digicheck database system to search and verify the Social Security Number; and (v) all checks are scanned into Digicheck nightly or at the end of each shift.

8. Per review of All Checks Cashed records and speaking with management of the company, IRS learned that All Checks Cashed utilizes the Digicheck database system. Digicheck stores information relative to when accounts are accessed which is how management of All Checks Cashed noticed that **TORIBIO** was the individual who cashed the checks. **TORIBIO** was the only individual to access the accounts and the individual who created each account. Management began investigating and noticed the checks were cashed outside of tax season and that **TORIBIO** was cashing a large amount. Management pulled **TORIBIO's** employee records which reflected all the checks that **TORIBIO** cashed.

9. On December 22, 2011, management questioned **TORIBIO**. Based on information provided by **TORIBIO**, management of All Checks Cashed prepared a document entitled "Statement of Facts" which was presented to **TORIBIO** and reviewed with her, line by line. **TORIBIO** agreed that the Statement of Facts was accurate and did not dispute the information contained on that document. **TORIBIO** signed and dated the Statement of Facts.

10. I have reviewed the Statement of Facts dated December 22, 2011. The statement includes the following information: (i) **TORIBIO** admitted to accepting approximately 300

U.S. Treasury tax refund checks from two individuals and admitted to negotiating each and every check, made payable to numerous payees unknown to me, at her place of employment, while knowing that each and every check was generated in a fraudulent manner, and while knowing that each piece of identification presented her with said checks was fraudulent and/or counterfeit; (ii) **TORIBIO** admitted to beginning the aforementioned check-cashing activity in March of 2011 and to continuing the activity through December 21, 2011; (iii) **TORIBIO** admitted to accepting payment for her participation in this scheme in the form of cash in amounts ranging between $200 to $1,000; (iv) **TORIBIO** admitted that she used the payments she received for her participation in the scheme to purchase a Honda CRV motor vehicle, in September or October 2011, for $7,000.00; and (v) **TORIBIO** admitted that while engaging in this fraudulent check-cashing activity, she failed to follow established company check-cashing procedures which were well known to her.

### Record review

11.     A review of IRS records and All Checks Cashed records determined that **TORIBIO** negotiated at least 287 U.S. Treasury refund checks between the time period from on or about February 17, 2011, through on or about December 21, 2011. The 287 checks amounted to more than $1.8 million dollars of SIRF related funds. By way of example, a review of records shows the following.

12.     (a)     All Checks Cashed records show that on December 14, 2011, **TORIBIO** negotiated a U.S. Treasury check numbered 3158 03827662 made out to Victim 1 for $6,222.41 at All Checks Cashed, in Dorchester. The front of the check has a small notation which lists "61.41 INTEREST" as well as a check date of "11/18/11" listed on it. The back of

the check has Victim 1's name listed, a Social Security Number "xxx-xx-1815," and a date of birth of "xx-xx-51," all handwritten. According to management at All Checks Cashed, it is common practice of that company to include a social security number and a date of birth on the check.

        (b)      A review of IRS records shows the following: (i) one Form 1040EZ, U.S. Income Tax Return document, was filed for the tax year 2010 in the name of Victim 1 Social Security Number of "xxx-xx-1815," and a Bridgeport, Connecticut address listed; (ii) attached to the Form 1040EZ was a W-2 Wage and Tax Statement that lists New Britain Day Nursery Inc., of Kensington, Connecticut, as Victim 1's employer and reflects that during 2010, Victim 1 received $39,416.00 in wages; and (iii) on November 18, 2011, a federal tax refund was issued in the amount of $6,222.41, of which $61.41 was interest.

        (c)      A review of IRS records shows the following: (i) the Employee Identification Number ("EIN") listed on the Form W-2 for New Britain Day Nursery, Inc., is inaccurate as there are no W-2 statements filed under that EIN; (ii) IRS records do not show Victim 1 having ever received any wage income from New Britain Day Nursery, Inc.; and (iii) during the years 2010-2015, Victim 1 has only received benefits from Social Security Administration ("SSA").

        (d)      On October 11, 2016, IRS agents spoke with Victim 1 who confirmed that she: (i) has never lived in Bridgeport, Connecticut; (ii) has never filed a Federal Income Tax Return; (iii) has never worked at "New Britain Day Nursery, Inc."; and (iv) her address is in Puerto Rico.

13.    (a)      All Checks Cashed records show that on December 16, 2011, **TORIBIO** negotiated a U.S. Treasury check numbered 3158 03814185 made out to Victim 2 for $6,425.00

at All Checks Cashed in Dorchester.  The front of the U.S. Treasury Check lists a check date of "11/18/11." The back of the check has Victim 2's name listed, a Social Security Number "xxx-xx-5249", and a date of birth "xx-xx-60," all handwritten.

    (b)  A review of IRS records shows the following: (i) one Form 1040A, U.S. Individual Income Tax Return document, was filed for the tax year 2010 in the name of Victim 2 with Social Security Number of "xxx-xx-5249," a Providence, Rhode Island address listed; (ii) attached to the Form 1040A was a W-2 Wage and Tax Statement that lists White House Tavern Company of Newport, Rhode Island, as Victim 2's employer, and reflects that during 2010, Victim 2 received $29,410 in wages; and (iii) ) on November 18, 2011, a federal tax refund was issued in the amount of $6,425.00.

    (c)  A review of IRS records shows the following: (i) the EIN listed on the Form W-2 for White Horse Tavern Company is inaccurate as that EIN number belongs to a different company located in Tennessee; (ii) IRS records do not show Victim 2 having ever received any wage income from White Horse Tavern Company; and (iii) during the years 2010-2015, Victim 2 has only received benefits from the SSA and has no other income information reported to the IRS.

    (d)  On October 11, 2016, IRS agents spoke with Victim 2 who confirmed that she: (i) is 75 years old, lives in Puerto Rico and has never lived in or been to the United States; (ii) has never worked at White Horse Tavern Company; and (iii) did not file a Form 1040A U.S. Individual Income Tax Return for the tax year 2010 nor did she authorize anyone to do so.

  14.  The investigation revealed the check referenced in paragraphs 12 and 13 above, were authentic U.S. Treasury checks that were issued based on fraudulent tax filings.  The

7

Form W-2 attached to each of those tax returns reported false income and withholding information and the employer listed on each of the Form W-2's did not submit documentation establishing any payment, salary, or withholding information for either Victim 1 or Victim 2.

### Conclusion

15. Based on the foregoing, I respectfully submit there is probable cause to conclude that from on or about February, 2011, through on or about December 16, 2011, **TORIBIO,** embezzled, stole, purloined, and knowingly converted to her use and the use of another, money, and a thing of value of the United States and any department and agency thereof, namely, the Internal Revenue Service, in an amount totaling more than $1,000, all in violation of 18 U.S.C. § 64l.

Sworn to under the pains and penalties of perjury.

_____
JOSHUA STASIO
Special Agent, IRS

Subscribed and sworn before me this 7th of November, 2016, in Boston, Massachusetts.

_____
DONALD L. CABELL
United States Magistrate Judge